JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Richard Griffin, appeals from his conviction for theft following a jury trial. He asserts that his conviction contravenes the manifest weight of the evidence. We cannot say that the jury clearly lost its way or caused such a manifest miscarriage of justice that a new trial is required. Therefore, we affirm.
 {¶ 2} Appellant and a co-defendant were both charged with theft in a one-count indictment filed January 13, 2005. The case proceeded to a jury trial on August 9, 2005, at the conclusion of which the jury returned a verdict finding appellant guilty of theft of merchandise valued at $500 or more but less than $5,000. The court sentenced appellant to six months' imprisonment and ordered him to pay restitution in the amount of $190.
 {¶ 3} At trial, the jury heard the testimony of Sharon Kaleal, an assistant manager at Kids Footlocker at Randall Park Mall in North Randall, Ohio; Suzanne Russo and Rodney Konik, drivers for United Parcel Service; Scott Fuller, maintenance supervisor at Randall Park Mall; and Lieutenant Harry Rose, a detective with the North Randall Police Department. Ms. Kaleal testified that on October 25, 2004, she arranged to ship two boxes of shoes via United Parcel Service ("UPS"). "Suzanne," the regular UPS driver at the mall, picked them up. Kaleal testified that the value of the contents of the boxes was approximately $1100 total. She identified the boxes in a photograph.
 {¶ 4} Ms. Russo testified that in October 2004, she was employed as a truck driver by UPS and had been making deliveries and pick-ups at Randall Park Mall five days a week for twelve years. On October 25, 2004, she was working with Rodney "Rocky" Konik, a "swing driver" who drove a large "box truck" to help with packages which did not fit in Russo's regular truck. Russo and Konik delivered three "cartloads" of merchandise to Footlocker that day, and simultaneously picked up two boxes. Konik took the boxes down to his truck while Russo completed the delivery. Russo then met Konik at the elevator and they rode down together.
 {¶ 5} Russo testified that Konik noticed the latch on the back of his truck "[wasn't] right." When he opened the truck, he discovered that the two boxes he had just picked up were missing; a pack of cigarettes was in the truck. There were no other people in the garage.
 {¶ 6} Russo then went up the stairs next to the elevator. She heard sounds behind a wall. She came back down the stairs and opened a door. She heard scuffling noises and the sound of someone going down the stairs, so she followed. She recognized the two people she was chasing as maintenance employees at the mall; they turned around to look at her, so she saw their faces. She stopped chasing them and went back to search for the boxes.
 {¶ 7} Russo said she contacted the security office to call the police. A police officer arrived "within minutes." She explained to the officer that "Stanley and Richard" had "taken off" and she chased them, and that she needed a key for the utility room to see if the boxes had been put in there. Someone came with a key and opened the room. They found the two boxes in the utility room, covered by a garbage bag. They had not been opened.
 {¶ 8} Russo testified that the mall manager or the head of maintenance gathered the approximately eight maintenance employees who were working that day. Russo identified "Stanley" and "Richard" as the persons she had chased. Police took them into custody. Russo and Konik then emptied the boxes and gave them to the police. The police also took the cigarette pack.
 {¶ 9} Konik testified that he was a UPS "swing driver" assigned to deliver shoes to Randall Park Mall on Wednesday, October 20, 2004. He arrived there at approximately 12:00 noon and began loading the packages onto carts. He saw appellant's co-defendant when he went to get the carts, but saw no one else.
 {¶ 10} Konik and "Suzy" [Russo] took three loaded carts to the Kid's Footlocker store. They unloaded one cart, then Konik loaded two outgoing boxes onto the cart and took it back down to the truck while Russo continued to complete the delivery. He went back upstairs to help Russo, but she was already done, so they returned to the truck together. He had been away from the truck for "less than a minute." He noticed that the "hook shaped thing that holds the [truck's rear] door down" was not latched. He opened the truck and discovered that the two boxes were missing.
 {¶ 11} Russo told Konik to stay with the truck while she ran upstairs. Konik walked to the front of the truck to scan the parking lot. The two defendants ran out of the doors in front of him. He was able to observe their faces for a few seconds.
 {¶ 12} Mr. Fuller testified that only maintenance personnel had keys to the utility room, and the only maintenance personnel on duty were Fuller, appellant's co-defendant, and Jerry Jackson. Appellant was a housekeeping employee; housekeeping employees do not have keys to the utility room. Fuller noted that the utility room was locked when he was called to open it.
 {¶ 13} Appellant challenges the weight of the evidence against him. As he correctly notes, an appellate court reviewing the weight of the evidence "sits as the `thirteenth juror' and, reviewing the entire record, weighs all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Thompkins (1997), 78 Ohio St.3d 380.
 {¶ 14} While no one saw the theft occur, the UPS drivers gave consistent testimony, and the timing of the events they described severely limited the inferences the jury could draw. Circumstantial evidence strongly pointed to the appellant and his co-defendant as the perpetrators. They were the only persons seen in the area within a minute after the theft occurred. They were observed running away from the UPS driver, suggesting guilty knowledge. The stolen merchandise was found in a locked utility room; appellant's co-defendant was one of only three people on the premises who had a key to this area. Based upon this evidence, we cannot say that the jury lost its way or created a manifest miscarriage of justice. Accordingly, we affirm.
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Rocco, Judge, Sweeney, P.J. and Kilbane, J., Concur.